**CITY OF BIG SPRING, Petitioner,**

**v.**

**BOARD OF CONTROL of the State of Texas et al., Respondents.**

**No. A–10819.**

Supreme Court of Texas.

June 15, 1966.

Rehearing Denied July 27, 1966.

John A. Burgess, City Atty., Big Spring, J. C. Hinsley, Austin, for petitioner.

Waggoner Carr, Atty. Gen., Austin, John Reeves and Pat Bailey, Asst. Attys. Gen., for respondents.

GRIFFIN, Justice.

This is a suit brought by the City of Big Spring, Texas, for a declaratory judgment and under authority of a concurrent resolution of the 57th Legislature against the State of Texas, The Board of Control of the State of Texas, The Board for Texas State Hospitals and Special Schools, and the Attorney General of the State of Texas. The object of the suit was to have determined the rights of the parties under a certain contract whereby the City of Big Spring agreed to furnish water to the Big Spring State Hospital at 10 cents per 1000 gallons in a quantity not to exceed 300,000 gallons per day as long as the State of Texas shall in good faith maintain and operate said hospital on said site. The City sought to have the contract declared invalid and at an end; to renegotiate the contract so as to require the state to pay the City the actual present cost of the water; and for general relief. The case was tried before the trial judge without a jury and the court rendered judgment that the contract was a valid and binding contract, and denied all relief sought by the City. The City appealed and the Court of Civil Appeals affirmed the trial court's judgment. 389 S. W.2d 523.

Petitioner has twelve points of error in its application for writ of error filed in this Court. These are argued under two general heads, viz.: (1) That the City of Big Spring had no authority to make the contract herein involved and (2) that the State Board of Control had no authority to make the contract. There are some collateral points, but their disposition depends to some extent on our action on the above two points.

Under the first point it is argued that by the contract the City of Big Spring surrendered its right to determine the rates

to be charged water users for water; that this is a legislative or governmental function, and a contract which is a surrender by the City of such rights is therefore void. Cases discussing governmental functions of a city and its inability to delegate or surrender these functions are cited to sustain this point. We have no quarrel with these cases. In the case we have before us the City is exercising a proprietary or business function only. In such capacity a city can make a contract, under authority of legislative enactment, in all things as an individual or private corporation. City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W. 2d 622 (1952); City of Crosbyton v. Texas-New Mexico Utilities Co., 157 S.W.2d 418, 420 (Tex.Civ.App., 1942, error refused, want of merit); 39 Tex.Jur.2d 638, § 308.

Art. 1108, § 3, Vernon's Texas Civil Statutes expressly confers the power upon a city such as Big Spring to enter into the contract we have here. The legislative and judicial history of this Act can leave no doubt as to the intent of the Legislature in the passage of this Act. As we said in City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622, 627 (1952):

" * * * The statute was passed expressly conferring upon the cities this authority, (to supply water to nonresidents of the city) and, being directed as it was to the benefit of nonresidents it is but natural that they should be so designated."

Under Article 1108 it is provided in part that:

"Any town or city in this State * * * which owns or operates waterworks * * * shall have the power and right:

* * * * * *

"3. * * * to sell water * * * to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith [the city's water lines and mains] under contract with such town or city under such terms and conditions as may appear to be for the best interest of such town or city * *."

This Court in the case of Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576, p. 581 (1934), in discussing the meaning of the words "such terms as the Board of Mineral Development may deem fair and advantageous to this state," said:

"This language, subject only to the exceptions or provisos thereafter set out in the act, leaves it to the board to determine, in accordance with its judgment as to what is fair and advantageous to the state, the terms, conditions, covenants, and stipulations which shall be contained in the instrument constituting the agreement of modification.

"The word 'terms' is sometimes interpreted, on account of the particular method of its use, to have reference to the amount and the manner of making payment of purchase money, but *generally when used with respect to the contents of contracts, it is construed as embracing the conditions, covenants, limitations, and propositions comprising the things which the parties to the contract have agreed to do or not to do.*" (Citing authorities.)

All emphasis herein is supplied by this Court.

In answering the contention that the language used only gave the Board of Mineral Development limited powers, we said:

" * * * *The language used in the act is not susceptible of such interpretation, for it broadly invests the board with authority to enter into supplemental contracts on such terms as it may deem fair and advantageous to the state, in no way limiting or even directing the discretion thus given to the matter of reducing or revising the royalty.*"

Art. 1108, Vernon's Tex.Civ.Statutes is equally as broad in giving to the city authorities the right to contract under such terms and conditions as may appear to be for the best interest of such city or town "with regard to furnishing water outside the city limits." In making this determination the City could take into consideration

the advantages which would accrue to the inhabitants of the City by virtue of the location of the hospital adjoining their City. The City Council doubtless considered the fact that such hospital would have many employees who would live in the city limits and spend a large part of their wages with the merchants and other business and professional men in Big Spring; and that additional ad valorem tax revenues would become available to the City through the ownership of property inside the city limits by the families moving to Big Spring and employed by the hospital.

The judgment of the City Council has been borne out by the fact that the hospital did provide a new payroll to Big Spring, and at the time of the trial it was stipulated between the parties that such payroll amounted to $91,000.00 per month. The same is true with regard to ad valorem taxes that would be available to Big Spring. At the time of trial it was stipulated by the parties that hospital employees residing in the city limits were paying $3,000.00 per year in ad valorem taxes to the City. It was also stipulated that in addition to the approximately $875,000.00 original appropriation for construction of the hospital plant, the State has spent in excess of $18,-000,000.00 in establishing the hospital facilities.

The City further contends that it has lost large sums of money by virtue of this contract to furnish water to the State at the rate of 10 cents per 1000 gallons; that this results in the City granting a subsidy to the State, and has resulted in a progressively heavier drain on the revenues of the City and has necessarily required the prescription of higher water rates for city residents, and to this extent the City is restricted in the exercise of its legislative power of prescribing rates for its own inhabitants.

There is no evidence in the record as to higher water rates charged inhabitants of the City to support this contention, and in fact the only evidence on the matter indicates the contrary. There is no testimony in this record showing the water rate the residents in the City of Big Spring were paying for water in 1937 when the contract was made, nor the rate such residents were paying at any year or years since the making of the contract, up to and including the year the case was tried. There is no evidence that the water rate for resident citizens of Big Spring has ever been raised since the hospital was located there.

The only testimony the City saw fit to offer as to the earnings of the Water Department is found on the last page of its Exhibit No. 5. This instrument shows that for the year 1962-63 the total revenues for the water system were $899,644.65, and that total water system expenditures were $773,-038.42. The profit shown is therefore $126,606.23 for that year. This exhibit also shows that from the revenue of the water system for that year $209,400.00 was transferred to the City's General Revenue Fund. This $209,400.00 thus transferred relieved the residents of Big Spring from having to provide that sum through taxation in order to run the City.

■ The City of Big Spring had the authority to make the contract with the Board of Control, acting for the State, to furnish water to the Big Spring Hospital at the price and for the term as set out in the contract and resolution adopted by the City Council authorizing the Mayor to sign such contract on behalf of the City.

■ The City urges as its second series of points that the Board of Control had no legal authority to make this contract because it calls for expenditure of funds for a longer period than the then current Legislature appropriation and because the Legislature had made no appropriation to pay for the water at the time the contract was entered into.

The Legislature in providing for the establishment of this hospital at a site to be selected by the Board of Control gave the power to the Board of Control to enter into a contract with the successful city, which

would assure an adequate water supply for the operation of the hospital. The bill provided, among other things, "The Board of Control of Texas shall select a site for said hospital and the Board, in selecting such site, *shall make such selection with a view to * * * the supply of water.*" This supply of water of necessity must exist so long as the state maintains the hospital. The Legislature did not say "a temporary supply of water" or "a supply of water for a reasonable time, as determined by the Board," but it said, "with a view to the supply of water" for the hospital. The Act could only mean a permanent supply of water. Although the Act does not in so many words provide that the Board of Control shall contract for this supply of water, the Board must select a site with a permanent supply of water, and the implied power to contract for this supply of water is inherent in the language of the Act. Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519, 521 (1919); Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333, 335 (1961).

In regard to the contention that the Board could not validly contract for a water supply and agree to pay for the same in the absence of an appropriation previously made by the Legislature, the Act provides, "The support and general maintenance of said hospital shall be the same in every respect as is provided for insane hospitals as now provided by law." At the time of the signing of the contract for a water supply to be furnished by the City of Big Spring, Art. 3174, Revised Civil Statutes of the State of Texas, provided:

"Each eleemosynary institution established by law shall be managed and controlled in accordance with the provisions of this title. *The general control, management and direction of the affairs, property and business of such institutions is vested in the State Board of Control.*"

Art. 634, Revised Statutes, provided that the Board of Control should purchase all supplies for each eleemosynary institution.

Art. 642, Revised Statutes, provided that the Board of Control should contract for all supplies needed for the maintenance and operation of such institutions. These statutes gave power to the Board of Control to enter into the contract involved in this litigation with the City of Big Spring.

While Articles 634 and 642 were repealed by the State Purchasing Act of 1957 (now Art. 664-3, Vernon's Civil Statutes), Section 16 of such Act provides that all prior obligations under the authority of prior law shall not be impaired or affected.

The powers of the Board of Control over hospitals such as the one at Big Spring by the provisions of Chapter 316, Acts of the 51st Legislature, Regular Session 1949, were transferred to the Board for Texas State Hospitals and Special Schools.

■ The contention that the purchase contract was invalid because there then existed no legislative appropriation to pay for the water to be furnished in the future is answered by this Court's opinion in Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924). In that case an attack was made on an order of the State Textbook Commission purchasing certain textbooks for the public schools of Texas from Scribner's Sons. Among other objections it was urged that the contract to buy textbooks for a five-year period was invalid because it was for longer than the two-year period of legislative appropriations and created a debt which could not be paid for out of the reserves for the biennium in which created. This Court said:

"This contract obligates the state to introduce into and use relator's books in the public free schools for a period of five years. It obligates relator to furnish, offer, and sell these books to the state each year for five years, upon the requisition of the school authorities each year for such books as may be needed. Payment for them is to be made out of the current fund each year as they are purchased. The obligation of the con-

tract is not to buy a fixed number or amount of books, but only so many as are needed by the schools of the state. Liability is fixed only for such amounts as are requisitioned by the trustees of the schools. The number of books purchased for any year and the amount of money applied thereto is wholly within the control of the school authorities.

"The contract is for uniform text-books for a period of five years. No quantity is stipulated and no promise to pay, only an agreement to use the books in the schools. The statute and the contract provide that no debt is created. The obligation to pay arises only upon the purchase and delivery of books for the year when needed, and according to the purchase. The books so furnished and so purchased during any year do not make a charge on the future resources of the state, but are paid for each year as the purchases are made."

This Court quoted from the case of City of Tyler v. L. L. Jester & Co., 97 Tex. 344, 78 S.W. 1058 (1904), in which a long-term water purchase contract was attacked: "The making of a contract for water for a number of years, to be delivered in the future did not create a debt against the city, but the liability of the city arose upon the use by it of the water during each year."

■ The City has a point of error asserting that the contract is indefinite as to length of its term and that the state could cease taking water under the contract at any time it saw fit, therefore the City of Big Spring could terminate the contract at will.

Our contract is not an indefinite contract, but has a certain and definite term. Paragraph IV of the contract of October 22, 1937, provides:

"It is understood and agreed that this agreement is made in accordance with and pursuant to an agreement heretofore made by and between the City of Big Spring and the Board of Control of the State of Texas with reference to the location of said hospital site near the City of Big Spring, *and this contract with reference to furnishing of water to said hospital is and constitutes a material consideration influencing the Board of Control to locate said hospital at said site,* and this agreement with reference to the furnishing of water by the City to said hospital shall continue in full force and effect *and is not subject to being revoked as long as the State of Texas shall in good faith maintain and operate said hospital on said site."*

"Words which fix an ascertainable fact or event, by which the terms of a contract's duration can be determined, make the contract definite and certain in that particular." 17 Am.Jur.2d, p. 420, Sec. 80 and authorities cited therein; 17 Am.Jur.2d, p. 955, Sec. 486; 17A C.J.S. Contracts § 385, p. 454 and authorities cited therein; Foster v. Wright (Tex.Civ.App., 1919) 217 S.W. 1090, 1092 (7–8), no writ history.

Our contract specifically states that the City is to furnish and the state to pay for water *"as long as the State of Texas shall in good faith maintain and operate said hospital on said site."*

■ The State has paid a valuable consideration for its contract right to purchase water from the City, to-wit, the establishment and maintenance of the hospital since the late 1930's. Its acceptance of the benefits under the contract makes the City's obligation to furnish water needed by the State a subsisting and binding obligation. Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989 (1947). See also Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340 (1956); Portland Gasoline Co. v. Superior Marketing Co., 150 Tex. 533, 243 S.W.2d 823 (1952); Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555 (1943).

■ In connection with its claim that the contract may be terminated at the will of the City, the City also contends that the

contract has run for a reasonable time and therefore it may be ended. The answer to this contention is that it is only when a contract has no definite and determinable term that it may be terminated at the end of a reasonable time in order to carry out the intention of the parties. Corbin: On Contracts, Sections 19, 96 and 254, and authorities therein cited.

■ We have heretofore held the language of this contract makes a fixed and determinable term, therefore, the rule of law that a contract may be terminated at the end of a reasonable time does not apply to this case. The contract herein may be terminated or renegotiated by mutual consent of the parties, acting under legislative authority, provided there is a valuable consideration moving to the State for its termination or renegotiation. Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576 (1934).

As far as this record shows, this last point of error was not raised in the trial court, but the case was tried on the theory that the contract was an invalid contract because neither the City nor the State, acting through its Board of Control, had authority to make and enter into such a contract. The trial court found the contract to be a valid and binding contract.

The contract of the Board of Control with the City of Big Spring is a valid contract and is not subject to the attack made on it.

The petitioner relies on the following cases to sustain his attack on the contract:

Stevenson v. City of Abilene (Tex.Civ. App., 1934), 67 S.W.2d 645, writ refused. The court held that the City was exercising a governmental function. The first ground for the Court of Civil Appeals holding was: "In short, the petition fails to allege the breach of any covenant made by the sewerage company with Fred Cockrell" (Stevenson's predecessor in title). This being true, it made no difference if the City was engaged in a governmental or proprie-

tary function because no contract of the City had been breached.

In City of Ft. Worth v. First Baptist Church (Tex.Civ.App., 1924), 268 S.W. 1016, no writ history, the holding of the Court of Civil Appeals was that the trial court improperly granted the temporary injunction without notice, because the Church had no allegations which showed it had a contract with the City to furnish it water. The Church was within the city limits.

In Sturgeon v. City of Paris (1909), 58 Tex.Civ.App. 102, 122 S.W. 967, writ denied, the Court of Civil Appeals held that the City was not empowered under its then existing charter and the state statutes to furnish water to Sturgeon, who resided outside the city limits.

In Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 138 A.2d 402 (1957), the court held the contract covered an essential governmental function. It further held that since the contract "did not expressly delimit the time of its duration," the term of service may well be fixed by implication at "a reasonable time." The case recognizes that this rule has no application to contracts "sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty."

Hoskins v. City of Orlando, Florida (5th Cir.), 51 F.2d 901 (1931), held the City had no statutory authority to make the contract Hoskins sued on, therefore, the City's general demurrer was properly sustained.

Eastern Ill. State Normal School v. City of Charleston, 271 Ill. 602, 111 N.E. 573, L.R.A.1916D, 991, held that the City's general demurrer was properly sustained in the school's suit upon a contract which the City had no statutory authority to make, and it was therefore ultra vires and void.

Plant Food Co. v. City of Charlotte, 214 N.C. 518, 199 S.E. 712 (1938). The court reversed the action of the trial court in sustaining the general demurrer to the Food Company's petition. The trial court rea-

soned that the contract sued on was in the exercise of governmental function, and could not bind subsequent city administrations. In reversing the appellate court said: "We cannot see that any governmental discretionary power of the city was compromised in the making of this contract, and we are of the opinion that it cannot be arbitrarily or capriciously abandoned."

In Hargett v. Kentucky State Fair Board, 309 Ky. 132, 216 S.W.2d 912 (1949), the appellate court held the contract void as not in accord with the Kentucky statutes. The court said:

"(5) As a general proposition, in the absence of specific authority, a board of public officers in the exercise of its governmental powers may not make a contract extending beyond its term of office. But such a board, in the exercise of its business or proprietary powers, may contract as does a private corporation or as do individuals unless it is otherwise restrained by law."

City of North Newton v. Reiger, Mayor et al., 152 Kan. 434, 103 P.2d 873 (1940), supports our holding herein. The court there said:

"Some contention is also made that the cities have no power to contract beyond the terms of their offices. This contract is made by the two governing bodies *in the exercise of their administrative powers and duties. Under such circumstances, it may make a contract for a term of years.* * * * A contract of the kind under consideration must have a term sufficient to warrant the expense involved. *Much must be left to the judgment and discretion of the officials in performing their public duties.* A court may not interfere unless it clearly appears that the term fixed is unreasonably long or that the officials abused their discretion. We can arrive at no such conclusion here." (Emphasis added.)

In City Council of Augusta v. Richmond County, 178 Ga. 400, 173 S.E. 140 (1934), the court held the contract sued on by Richmond County was ultra vires and void, as no power was given to the City to make the contract.

In Reed v. City of Anoka, 85 Minn. 294, 88 N.W. 981 (1902), attack was made by Reed upon a contract the City had made with individuals to furnish the City water for 31 years on the ground the City had relinquished its rate-making power, thus illegally bartering and contracting away the legislative functions of the City, and therefore the contract was void. The trial court sustained the City's demurrer to Reed's petition. The appellate court affirmed, holding the contract *was not* in the exercise of the City's legislative function but only in the City's proprietary or business powers and the contract was legal and binding. In the course of the opinion the court uses language particularly applicable to our case:

"The question as to the necessities of the city of Anoka in respect to procuring a supply of water and lighting the city by electricity was one of fact for the officers to determine in the exercise of their sound judgment * * *." (Citing authorities.)

The power given municipalities to make contracts of this kind confers upon the local authorities large discretionary powers in respect thereto, with the exercise of which the courts will not interfere unless clearly abused—unless the contracts made by them are unreasonable, inequitable and unfair or tainted with fraud or illegality.

We see that the cases relied on by petitioner are either not in point in our case or sustain our opinion herein.

We affirm the judgments of both courts below.

### DISSENTING OPINION

STEAKLEY, Justice.

I am unable to agree with the philosophy of the majority opinion or with its limita-

tive approach. I would resolve the matter by application of the important and recognized principle that succeeding governing boards of municipal corporations should not be permanently disabled from exercising discretion for the public good in contracts of this nature; and that such contractual obligations to which the municipality was bound by prior governing boards should not be enforceable beyond a period of reasonable performance. As I see it, public policy requires that relief be available in the situation here presented; otherwise the City is bound indefinitely—so long as there is a State of Texas and a City of Big Spring—to subsidize state—not city—services, regardless of the extent and seriousness of its financial loss in so doing. The matter is of such moment to me that I shall write at some length.

The City of Big Spring, Texas, a Home Rule city, by a contract executed in 1937 with the Board of Control of the State of Texas, agreed to furnish water to a newly-established and soon to be constructed State hospital at a rate of ten cents per 1,000 gallons not to exceed 300,000 gallons per day. The contract recited: "This agreement with reference to the furnishing of water by the City to said hospital shall continue in full force and effect and is not subject to being revoked as long as the State of Texas shall in good faith maintain and operate said hospital on said site."

The Legislature in 1961 adopted a resolution authorizing the Board for Texas State Hospitals and Specials Schools to renegotiate the contract,[1] but the Attorney General ruled that renegotiation could be had only upon the basis of a new and adequate consideration moving to the State. In 1962 the Legislature authorized the City of Big Spring to institute a declaratory judgment suit against the State Board of Control, the Board of Texas State Hospitals and Special Schools and the Attorney General of Texas.[2] Pursuant thereto this suit

was filed by the City of Big Spring in 1964 seeking judgment declaring that the 1937 contract is subject to renegotiation as to the rates to be charged for water furnished by the City to the State hospital and that the City is no longer under legal obligation to supply water to the hospital at the rate of ten cents per thousand gallons, or at any rate less than the actual cost of the water to the City of Big Spring.

The material facts are undisputed. The hospital was duly constructed and has been continuously maintained and operated by the State. Its monthly pay roll is $91,000.00. The City has furnished water to the hospital at all times in accordance with the contract, with the State paying ten cents per 1,000 gallons therefor. The evidence establishes that the average cost of the water to the City for the years 1953–64 was 16.5 cents per 1,000 gallons; that during the years 1960–64 the average cost of the treatment and distribution of water by the City was 17.25 cents per 1,000 gallons; and that during the years 1960–64 the cost to the City for water purchased, treated and delivered to the hospital was 33.75 cents per 1,000 gallons. The water furnished the hospital and the loss therefrom to the City for the immediate past four years was shown to be as follows: 53,260,000 gallons in 1960, with a loss of $12,625.25; 49,807,000 gallons in 1961, with a loss of $11,829.16; 50,652,100 gallons in 1962, with a loss of $12,029.87; and 49,373,000 gallons for the year 1963, with a loss of $11,726.09. The total financial loss to the City for these four years was $48,210.37 and it is a reasonable conclusion from the evidence that such will continue at least to the extent of the pattern shown for the past years.

In Stevenson v. City of Abilene, 67 S.W. 2d 645 (Tex.Civ.App.1934, writ ref.), the court considered a contract in which it was assumed that the City had agreed to perpetually furnish irrigation water. The Court, speaking through Chief Justice

---

1. Acts 1961, 57th Leg., R.S., p. 1249.

2. Acts 1962, 57th Leg., 3rd C.S., p. 233.

Hickman, later Chief Justice of this Court, said:

"In operating the sewerage system, the city is exercising a governmental power. In doing so it must be left free to use its discretion in determining how best to serve its inhabitants. A contract which would have the effect of disabling it from fully exercising that power, and which would have the effect of preventing it from controlling its affairs in the future in the way it might deem best, would be void. A city has not the power to enter into a contract binding it perpetually to maintain an existing septic tank for the purpose of furnishing waste water to an individual for irrigation purposes. It must be left free to make such changes in its system as it, in its discretion, deems to be for the public good. City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143; City of Paris v. Sturgeon, 50 Tex.Civ.App. 519, 110 S.W. 459; City of Uvalde v. Uvalde Electric & Ice Co. (Tex.Com.App.), 250 S.W. 140; Ennis Water Works v. City of Ennis, 105 Tex. 63, 144 S.W. 930; City of Sweetwater v. Hamner (Tex.Civ.App.), 259 S.W. 191; City of Fort Worth v. First Baptist Church (Tex.Civ.App.), 268 S.W. 1016."

On motion for rehearing the Court took notice of an assignment that it erred in the statement: "In operating the sewerage system, the city is exercising a governmental power." With reference thereto the Court said that the language was unnecessary "because the same conclusion would have been reached had we regarded this power as municipal or proprietary, rather than governmental."

In City of Fort Worth v. First Baptist Church, 268 S.W. 1016 (Tex.Civ.App.1924), the court terminated the further obligations of the City under a contract in which the City agreed to furnish water to the church at no cost and without limitation in point of time, the water to be used in a swimming pool owned by the church which the citizens of Fort Worth could use without charge.

In the course of its opinion the court remarked that "If the contract has been observed for a reasonable time, the city then may thereafter certainly at its will declare the contract at an end." See Sturgeon v. City of Paris, 58 Tex.Civ.App. 102, 122 S.W. 967 (1909, writ ref.), holding that the city had the legal right to rescind an agreement to furnish water for a term which was indefinite and dependent upon the will of the consumer.

Other jurisdictions recognize the rule that municipal corporations are not legally bound to their proprietary contracts beyond a reasonable term of years in the absence of express statutory authority. See Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 138 A.2d 402 (1957): "The corollary theorem is that a municipality cannot bind itself by a perpetual contract, or a contract of unreasonable duration, unless by legislative sanction"; Hoskins v. City of Orlando, 51 F.2d 901 (5th Cir. 1951): "In the absence of express statutory permission, municipalities, even in their proprietary functions, may contract only for a reasonable time"; Eastern Illinois State Normal School v. City of Charleston, 271 Ill. 602, 111 N.E. 573, L.R.A.1916D, 991 (1916): "* * * it cannot be said that the city of Charleston, without legislative authority, could agree to furnish water to the complainant or any body else for 50 years for $5 whether the exercise of the power was in its nature private or governmental"; Plant Food Co. v. City of Charlotte, 214 N.C. 518, 199 S.E. 712 (1938):

"In the administration of its proprietary affairs the commissioners or councilmen of the town may make reasonable contracts binding upon their successors running through a term of years.

"The line between powers classified as governmental and those classified as proprietary is none too sharply drawn, and is subject to a change of front as society advances and conceptions of the functions of a government are modified under its insistent demands. * * *

"The true test is whether the contract itself deprives a governing body, or its successors, of a discretion which public policy demands should be left unimpaired."

See also Hargett v. Kentucky State Fair Board, 309 Ky. 132, 216 S.W.2d 912 (1949); City of North Newton v. Reiger, 152 Kan. 434, 103 P.2d 873 (1940); City of Augusta v. Richmond County, 178 Ga. 400, 173 S.E. 140 (1934). And compare Reed v. City of Anoka, 85 Minn. 294, 88 N.W. 981 (1902), where the court speaks of a thirty-one year contract as not prima facie void but subject to a showing of unreasonableness or unfairness; and Borough of Caldwell v. Borough of West Caldwell, 26 N.J. 9, 138 A.2d 402 (1957), where it was held:

"The bilateral contract of service that thereby came into being did not expressly delimit the time of its duration. But on well settled principles the agreement is not for that reason illusory, as too uncertain and indefinite for enforcement. The term of service may well be fixed by implication. Here, West Caldwell had rendered an executed consideration for the option, and to hold that the agreement is terminable at will would plainly subvert the evident reason and spirit of the contractual arrangement. The much more probable hypothesis is that the parties had in view continued performance for a reasonable time; and implications from the special circumstances and the relations of the parties are frequently read into the integration to serve the reasonably apparent design and to avoid injustice so obvious as to exclude it as an element of conscious intention."

The philosophy of these decisions rests in considerations of public policy which require that governing boards of municipal corporations not be encumbered indefinitely or for an unreasonable period of time in the exercise of discretion in public matters and in the administration of governmental affairs. Such contracts should not be binding beyond a period of reasonable performance, particularly where, as here, the contract in effect subsidizes state—not municipal—services for an indeterminative time at the option of the State no matter how great the financial loss to the City in the past years and in the years to come.

The specific prayer of the City in its suit for declaratory judgment is for a judicial declaration that the contract between it and the State of Texas is now subject to renegotiation to the limited extent of the rates to be charged for the water and that the City is under no further obligation to supply water to the hospital at the contract rate of 10 cents per 1,000 gallons or at any rate less than the actual cost of the water. The City did not seek a declaration either that the contract was void at inception or that it was at all times terminable at the will of the City. The City would be entitled to relief if the contract were void or terminable at will, and quite understandably the City argues such propositions in support of its case. But all that is necessary to the actual relief sought is a declaration that the contract in the respects put before the court is subject to renegotiation. It is my view that the contract in question is not binding beyond a period of reasonable performance, and that performance by the City of Big Spring for twenty-nine years meets this requirement.

I would reverse the judgments below and grant relief to the City of Big Spring consistent with the views expressed above.

NORVELL and HAMILTON, JJ., join in this dissent.