

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 29, 1970

Hon. George W. McNiel
State Auditor
Sam Houston State Office
  Building
Austin, Texas

Opinion No. M- 656

Re: Several questions relating
to Special Option Purchase
Agreement covering certain
data processing equipment
between the Texas State
Department of Agriculture
and International Business
Machines Corporation.

Dear Mr. McNiel:

You have requested our opinion as to the legality of
certain terms of a proposed agreement between the Texas State
Department of Agriculture and International Business Machines
Corporation. Your specific questions are as follows:

"1. Paragraph 4, Page 4. Under the Con-
stitution and Statutes of the State of Texas,
may an installment plan extend from the fiscal
year of 1969-1970 through and including the
1974-1975 fiscal year?

"2. Paragraph 2, Page 4. May the State,
in addition to the Total Sales Price, pay a
Special Option Purchase Fee for the privilege
of making periodic payments that are less the
normal rental charges for such equipment?

"3. Paragraph 5, Page 4. In the light
of Paragraph 3, General Section, Page 5, re-
lating to ad valorem taxes, does title to the
equipment pass to the State prior to completion
of all periodic payments?

"4. Paragraph 5, Page 4. Is the clause
'In the event that partial or total loss of the
machines is incurred, the net total of periodic
payments will be immediately due and payable',
in conflict with any creation of debt provisions
of the State of Texas?"

-3141-

Section 49 of Article III of the Constitution of Texas provides:

"No debt shall be created by or on behalf of the State, except . . ."  (Exception not applicable.)

In view of the provisions of Section 49 of Article III, proposed contracts payable out of future revenues are invalid. Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924); Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935). However, obligations that are current with revenues are not debts within the meaning of Section 49 of Article III. Charles Scribner's Sons v. Marrs, supra; City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex.Sup. 1966). Therefore a contract that does not obligate the State beyond the availability of the funds appropriated by the Legislature will not create a debt in violation of Section 49 of Article III of the Constitution of Texas. Charles Scribner's Sons v. Marrs, supra; City of Big Spring v. Board of Control, supra; Attorney General's Opinions M-89 (1967), WW-424 (1958), and V-1363 (1951).

The proposed contract submitted with your request contains provisions stating that:

"Notwithstanding the foregoing, if the legislative body appropriating funds for the Purchaser does not allocate funds for such Periodic Payment for any future Fiscal Period, the Purchaser will not be obligated to pay the Net Total of Periodic Payments remaining unpaid beyond the then current Fiscal Period.
. . ."

In view of the above quoted provisions the State is not obligated by the contract to expend any moneys beyond current revenues, and therefore such contract does not create a debt in violation of Section 49 of Article III of the Constitution of Texas.

In City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex.Sup. 1966), an attack was made on the validity of a contract for a supply of water to the State because the term of the contract was beyond current appropriations. In rejecting this contention the Supreme Court stated:

"The contention that the purchase contract was invalid because there then existed no legislative appropriation to pay for the water to be

furnished in the future is answered by this Court's opinion in Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924). In that case an attack was made on an order of the State Textbook Commission purchasing certain textbooks for the public schools of Texas from Scribner's Sons. Among other objections it was urged that the contract to buy textbooks for a five-year period was invalid because it was for longer than the two-year period of legislative appropriations and created a debt which could not be paid for out of reserves for the biennium in which created. This Court said:

"'This contract obligates the state to introduce into and use relator's books in the public free schools for a period of five years. It obligates relator to furnish, offer, and sell these books to the state each year for five years, upon the requisition of the school authorities each year for such books as may be needed. Payment for them is to be made out of the current fund each year as they are purchased. The obligation of the contract is not to buy a fixed number or amount of books, but only so many as are needed by the schools of the state. Liability is fixed only for such amounts as are requisitioned by the trustees of the schools. The number of books purchased for any year and the amount of money applied thereto is wholly within the control of the school authorities.

"'The contract is for uniform text-books for a period of five years. No quantity is stipulated and no promise to pay, only an agreement to use the books in the schools. The statute and the contract provide that no debt is created. The obligation to pay arises only upon the purchase and delivery of books for the year when needed, and according to the purchase. The books so furnished and so purchased during any year do not make a charge on the future resources of the state, but are paid for each year as the purchases are made.'

"This court quoted from the case of City of Tyler v. L. L. Jester & Co., 97 Tex. 344, 78 S.W. 1058 (1904), in which a long-term water

purchase contract was attacked:  'The making of
a contract for water for a number of years, to be
delivered in the future did not create a debt
against the city, but the liability of the city
arose upon the use by it of the water during each
year.'"

The Court then concluded:

"The contract of the Board of Control with
the City of Big Spring is a valid contract and
is not subject to the attack made on it."

Under the contract involved in City of Big Spring v.
Board of Control, supra, the city agreed to furnish water at a
fixed rate "as long as the State of Texas shall in good faith
maintain and operate said hospital on said site." (Referring to
Big Spring State Hospital.)

In view of the foregoing your questions are answered
as follows:

1.  An installment plan may extend from the fiscal
year 1969-1970 through and including 1974-1975, provided no
obligation exists to expend moneys beyond current revenues.

2.  The State may, in addition to the Total Sales
Price, pay a Special Option Purchase Fee for the privilege of
making periodic payments that are less the normal rental charges
for such equipment.

3.  The contract specifically provides:

"Title to the machines and any replacements
and additions shall remain in IBM and assigns
until the Total Option Sale Price is fully paid.
. . ."

Therefore, title to the equipment does not pass to the
State until the Total Option Sale Price is fully paid.

4.  Since all moneys that become due and payable will
be payable from current revenues available at the time such ob-
ligation is due, no debt is created.  Charles Scribner's Sons v.
Marrs, supra;  City of Big Spring v. Board of Control, supra.

## S U M M A R Y

A proposed Special Option Purchase Agreement between the Texas State Department of Agriculture and International Business Machines Corporation does not create a debt in violation of Section 49 of Article III of the Constitution of Texas for the reason that there is no obligation to expend moneys beyond revenues available at the time the obligation is due and payable.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Milton Richardson
Jack Goodman
Ivan Williams
Gordon Cass

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant