

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 5, 1972

Mr. James H. Harwell                Opinion No. M- 1136
Executive Director
Texas Industrial Commission         Re: Questions relating to
P. O. Box 12728, Capitol Station        meanings of terms used
Austin, Texas  78711                    in Art. 1015j-1, V.C.S.

Dear Mr. Harwell:

Your recent letter requests the opinion of this department as to the meaning of certain terminology used in House Bill 226, Acts of the 62nd Legislature. That bill, as enacted, is codified as Article 1015j-1, Vernon's Civil Statutes.

Your first question is as follows:

"Line three of the attached act refers to 'one percent of the city's general fund budget'. What is a city's general fund budget? Can it include the total of all revenues collected regardless of source or regardless of account title such as 'utility fund'? If 'general fund' does not include all accounts or revenue funds in these accounts, which titled accounts do fall under the legal definition of general fund budget as used in this act."

Your second question is as follows:

"Line four refers to 'and promoting its (i.e., the city's) growth and development'. If it were determined by a city that the extension of utilities to an industry (cost to be paid out of funds appropriated pursuant to this act)

were necessary to 'promote the city and its growth and development' would this constitute a legal expenditure of funds on the part of said city?  If not, what types of expenditures, other than purchase of advertising, if any, fall under the legal definition of 'promotion' as used in this act?"

Section 1 of Article 1015j-1 reads as follows:

"The governing body of any incorporated city having a population of not more than 500,000 according to the last preceding Federal Census may appropriate from the general fund an amount not exceeding one percent of the general fund budget for that year, such appropriation to be for advertising such city and promoting its growth and development."

A reply to your first question may not be made in the absence of more facts.  While state statutes govern extensively the fiscal affairs of our cities, yet there is not complete uniformity as to charter provisions, status of bonded indebtedness, or accounting procedures and terminology.  Accordingly, in furnishing this opinion, we are necessarily confined to a general statement without any attempt to hold that a certain accounting procedure applies to a given city.

You have asked, "What is a city's general fund budget, etc.?"  As qualified above, we are of the opinion that a city's general fund budget generally governs the expenditure of all income which is not by charter, ordinance, statute, contract or bond indenture committed to paying designated portions of the city's debts or expenses.  For example, utility revenue is commonly held apart from general funds until interest and sinking funds on any utility bond indebtedness are taken care of.

The cities have authority to earmark certain revenue for a special purpose.  See 40 Texas Jurisprudence 2d, page 225, Section 535, Special Funds, for the statement,

"The governing body of a municipality oper-
ating under the general laws is authorized by
statute to provide special funds for special
purposes and to make a particular fund disbursa-
ble only for the purpose for which it was created."

See also Articles 1113 and 1113a, Revised Civil Statutes of Texas, 1925, for laws relating expressly to revenue from utilities operated by a city.

We construe your second inquiry as including two questions.  The First is whether money appropriated under Article 1015j-1* may lawfully be used to extend the city's utility lines to serve an industry.  In other words, would making utilities available to an industry fall under the heading of promoting the growth and development of the city as contemplated by Article 1015j-1.  This is a fact question to be determined by the governing body of the city.  The Attorney General cannot determine fact questions.  Atty. Gen. Opin. No. M-517 (1969, at p. 2470).

In City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex.Sup. 1966), the Court said:

"Art. 1108, Vernon's Tex.Civ. Statutes is
equally as broad in giving to the city authorities
the right to contract under such terms and condi-
tions as may appear to be for the best interest of
such city or town 'with regard to furnishing water
outside the city limits.'  In making this determina-
tion the City could take into consideration the

---

* Article 1015j-1 applies only to incorporated cities having a
  population of not more than 500,000.

advantages which would accrue to the inhabitants of the City by virtue of the location of the hospital adjoining their City. The City Council doubtless considered the fact that such hospital would have many employees who would live in the city limits and spend a large part of their wages with the merchants and other business and professional men in Big Spring; and that additional ad valorem tax revenues would become available to the City through the ownership of property inside the City limits by the families moving to Big Spring and employed by the hospital.

"The judgment of the City Council has been borne out by the fact that the hospital did provide a new payroll to Big Spring, and at the time of the trial it was stipulated between the parties that such payroll amounted to $91,000.00 per month. The same is true with regard to ad valorem taxes that would be available to Big Spring. At the time of the trial it was stipulated by the parties that hospital employees residing in the city limits were paying $3,000.00 per year in ad valorem taxes to the City. It was also stipulated that in addition to the approximately $875,000.00 original appropriation for construction of the hospital plant, the State has spent in excess of $18,000,000.00 in establishing the hospital facilities." (at p. 812-813).

The Court here points out many of the benefits accruing to the city from the nearby location of a hospital. A new industry in or near a city or town might be equally beneficial to the growth and development of the city.

A city clearly has authority to serve users beyond its limits under Article 1108, Vernon's Civil Statutes, Section 3, reading as follows:

"Any town or city in this State which has or may be chartered or organized under the general laws of Texas, or by special Act or charter, and which owns or operates waterworks, sewers, gas or electric lights, shall have the power and right:

". . . .

"3.  To extend the lines of such systems outside the limits of such towns or cities and to sell water, sewer, gas, and electric light and power privileges or service to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith under contract as may appear to be for the best interest of such town or city; provided that no electric lines shall, for the purposes stated in this section, be extended into the corporate limits of another incorporated town or city."

In the 1966 Supreme Court case, City of Big Spring v. Board of Control, supra, the Court expressly approved of Article 1108 in the following language:

"Art. 1108, Section 3, Vernon's Texas Civil Statutes expressly confers the power upon a city such as Big Spring to enter into the contract we have here.  The legislative and judicial history of this Act can leave no doubt as to the intent of the Legislature in the passage of this Act. . . ." (at p. 812).

We are of the opinion that in view of the legislative and judicial history of Article 1108, a city may extend its utility lines beyond the city limits.[1]

---

[1] City of Sweetwater v. Hamner, 259 S.W. 191 (Tex.Civ.App. 1924, error dism.), holding Article III, Section 52, and Article XI, Section 3, Texas Constitution, forbids such extension of the City's utility lines, is no longer the law in view of the Big Spring case, supra; and see also City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622, 627 (1952).

We do not regard Article 1108, Section 3, and the <u>Big Spring</u> and <u>Texarkana</u> decisions as being in conflict with Article 970a, the Municipal Annexation Act enacted in 1963. Article 970a pertains only to the general territorial jurisdictions of cities, overlapping jurisdictions, and annexations. The right of a city to serve others with extension of utility services beyond the city limits is not expressly dealt with in the Municipal Annexation Act but is expressly authorized in Section 3 of Article 1108.

With reference to your second inquiry, you also request that we name the types of expenditures, other than purchase of advertising, if any, that fall under the legal definition of "promotion" as used in Article 1015j-1. We cannot do so, because that is entirely too broad a question, and would require our dealing in speculative hypothetical problems. Each proposal must be considered on its own merits as the problem arises.

S U M M A R Y

As a general rule, a city's general fund budget generally governs the expenditures of all income which is not by charter, ordinance, statute, contract or bond indenture committed to paying designated portions of the city's debts or expenses.

Under Article 1108, V.C.S., any town or city in this State which has or may be chartered as authorized under the general laws of Texas, or by special Act or charter, and which owns or operates waterworks, sewers, gas or electric lights, shall have the power and right to extend the lines of such systems outside of the limits or such towns or cities.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Mr. James H. Harwell, page 7,      (M-1136)


Prepared by James S. Swearingen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

John Banks
James Quick
Lewis Jones
Mel Corley

SAMUEL D. MCDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant