

# The Attorney General of Texas

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

September 2, 1982

Mr. James R. Hine
Acting Administrator
Texas Employment Commission
TEC Building
Austin, Texas    78778

Opinion No.   MW-512

Re:   Whether Texas Employmer
may obtain advance to stat
unemployment trust fund frc
Federal Unemployment Account

Dear Mr. Hine:

You ask whether the state may legally obtain an advance from tł federal unemployment account to the state unemployment trust fur under section 1201 of the Social Security Act, 42 U.S.C. §1322, shoul an advance be needed to augment the fund. You wish to know whethe article III, section 49 of the Texas Constitution or article 5221b-1€ V.T.C.S., prohibits the state from securing such an advance.

As you note in your request letter, the provisions of the Texa Unemployment Compensation Act and the operations of the Texa Employment Commission under it must be approved by the United State Secretary of Labor pursuant to the Federal Unemployment Tax Act ar the Social Security Act. I.R.C. §3304; 42 U.S.C. §503. If the stat fails to pay unemployment benefits under the Texas Unemployment Act it would lose the necessary federal approval. In consequence, tł state would no longer receive federal funding for the administratic of the Unemployment Compensation Act and Texas employers would nc qualify for the federal unemployment tax credit under section 3302 c the Internal Revenue Code.

The Texas Employment Commission has a broad grant of authority t make the expenditures and take the actions necessary to carry out it duty to administer the Unemployment Compensation Act. V.T.C.S. art 5221b-9. We believe the commission would have implied statutor authority to seek an advance from the federal unemployment account t the state unemployment trust fund as long as no other Texas statute c constitutional provision prevented it from doing so.

The authority for the granting of advances to the states from tł federal unemployment account in the unemployment trust fund appears i section 1321 of Title 42, United States Code. By amendment c sections 1321 and 1322 in 1981, these advances are now required to t repaid by the state with interest at a percentage rate determine

according to a formula contained in section 1322, unless they are repaid in full before the close of September 30 of the calendar year in which the advances were made. Section 1322 also provides that the interest required to be paid shall not be paid by a state from amounts in its unemployment fund. If the state pays such interest directly or indirectly from its unemployment fund, the state's unemployment compensation law will not be certified by the United States' Secretary of Labor. However, the state may repay the advances in whole or part at any time by requesting a transfer from its unemployment account to the federal unemployment account of the appropriate amount. In the event the advances are not paid voluntarily within the no-interest time frame, section 3302(c)(2) of the Internal Revenue Code provides for their recovery by a reduction of the tax credits allowed to the taxpayers of the State and the application of the additional revenues consequentially obtained by the federal government to the repayment of such delinquent advances. We have found no provision for an involuntary recoupment of unpaid interest.

Article 5221b-16, V.T.C.S., provides that benefits shall be deemed to be due and payable under the Texas Unemployment Compensation Act only to the extent provided in the act and to the extent that moneys are available therefor to the credit of the Unemployment Compensation Fund, and neither the state nor the commission shall be liable for any amount in excess of such sums. This provision limits the commission's liability for payment of benefits to the moneys "available therefor to the credit of the Unemployment Compensation Fund." The statute does not purport to limit the commission's power to seek the advances in question. Article 5221b-16 is directed only to the payment of benefits under the Texas Employment Commission Compensation Act.

Article III, section 49 of the Texas Constitution provides in part that "[n]o debt shall be created by or on behalf of the [s]tate, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the [s]tate in war, or pay existing debt." (Emphasis added). In construing this section of the constitution, the Texas Supreme Court in the case of Charles Scribner's Sons v. Marrs, 262 S.W. 722 (Tex. 1924), held, among other things, that obligations that run current with revenues are not debts within the contemplation of the constitution. The holding in this case was restated with approval by the Texas Supreme Court in 1966 in the case of City of Big Spring v. Board of Control, 404 S.W.2d 810, 814 (Tex. 1966). In view of these constructions of article III, section 49, it does not, in our opinion, present any bar to the state's obtaining such advances. Presumably, the commission would expect to repay the principal of the advance with current state funds. If repayment is not made before interest accrues, by federal action such advances will be recouped by a reduction of the tax credits of the state's taxpayers.

We also believe that the commission may contract to pay interest on the proposed advances, and that the interest could legally be paid from the Unemployment Compensation Special Administrative Fund established by article 5221b-22a, V.T.C.S.   As noted above, the commission has broad authority under article 5221b-9, V.T.C.S., "to administer this Act" and to "make such expenditures... and take such other action as it deems necessary or suitable to that end." (Emphasis added).   Article 5221b-22a, V.T.C.S., provides in part:

> There is hereby established as a special fund, separate and apart from all public moneys or funds of this State, an Unemployment Compensation Special Administration Fund which may be used by the Commission for the purposes of paying costs of the administration of this Act including the costs of reimbursing the Unemployment Compensation Benefit Accounts for unemployment compensation benefits paid to former employees of the State of Texas which are based on service for the state, and the costs of construction and purchase of buildings and land necessary in such administration.   The State Treasurer shall be the Treasurer and custodian of the fund.   He shall administer such fund in accordance with the directions of the Commission, and the Comptroller shall issue warrants upon it in accordance with the directions of the Commission.   All interest and penalties collected under the provisions of this Act and all moneys now on deposit in the Unemployment Compensation Special Administration Fund shall be paid into this fund....   The Commission may, by resolution duly entered in its Minutes, authorize to be charged against said moneys any expenditures which it deems proper in the interest of good administration of this Act, provided the Commission in such resolution finds that no other funds are available or can properly be used to finance such expenditures.   All moneys which are deposited or paid into the Unemployment Compensation Special Administration Fund may be expended in accordance with the provisions of this Act, upon appropriation by the legislature, and shall not lapse at any time or be transferred to any other fund.   (Emphasis added).

See also Attorney General Opinion MW-474 (1982) (discussing composition and use of fund).

The Unemployment Compensation Special Administrative Fund, denominated Fund 165, is appropriated by the following language in the current General Appropriations Act.

> Out of the Unemployment Compensation Special Administrative Fund No. 165, to be:
>
> There is hereby appropriated to the Texas Employment Commission all funds which the Commission, by resolution duly entered in its Minutes, deems proper in the interest of good administration of the Texas Unemployment Compensation Act, provided that no other funds are available or can properly be used to finance such expenditures. This estimate is based on the assumption that Congress will enact legislation extending Section 903 of the Social Security Act to authorize the Texas Employment Commission to expend funds out of the Federal Unemployment Trust Fund for the administration of the Unemployment Compensation Law and public employment offices.

Acts 1981, 67th Leg., ch. 875, at 3402 (amount of appropriation omitted).

As an examination of these provisions of the Unemployment Compensation Act and the Appropriations Act shows, the commission may contract to pay interest from Fund 165 if the interest is a cost of administering the Act. As a general rule, the state is not liable for interest in the absence of a statute or express contract providing for the payment thereof. State v. Hale, 146 S.W.2d 731 (Tex. 1941); Walker v. State, 103 S.W.2d 404 (Tex. Civ. App. - Waco 1937, no writ). However, prior opinions of this office indicate that a state agency may agree to pay interest on the basis of implied statutory authority.

Attorney General Opinion H-691 (1975) held that the trustee of the Mental Health and Mental Retardation Patient Benefit Fund could place the fund in certificates of deposit and then pledge such certificates as collateral for loans. The opinion considered whether the purpose and effects of the transaction were consistent with the relevant statutes, and did not seek express statutory authority for the loan transaction. Attorney General Opinion H-340 (1974) concluded that the State Bar could finance the construction of the State Bar Center by pledging voluntary contributions and revenues generated by the building. The statutory authority was found in language giving the State Bar "power to contract with relation to its own affairs and necessary to carry out the purposes of this Act." The opinion did not specifically address the question of interest. However, such a financing arrangement would necessarily involve the payment of

interest.  See also Attorney General Opinion M-656 (1970) (purchase of equipment on installment plan).

We believe the commission may make the payments in question even though it does not have express statutory authority to pay interest. Expenditures incident to maintaining an adequate flow of funds through the state unemployment trust fund could reasonably be characterized as "costs of the administration of this Act." V.T.C.S. art. 5221b-22a. This office concluded in Attorney General Opinion O-128 (1939) that Fund 165 could be used for payment of legal fees and court costs incurred by the commission in civil suits brought to collect delinquent contributions under the act. The commission may charge against Fund 165 "any expenditures which it deems proper in the interest of good administration of this Act...." This is a broad grant of authority. Under this grant of authority we believe the commission could conclude that the interest payments incident to maintaining the balance of the unemployment trust fund would be proper administrative expenditures. Such interest payments might well enable the commission to continue to make benefit payments in an orderly and timely fashion during a period of fiscal adjustment. We cannot say that the proposed expenditure is not authorized. The commission may agree to make interest payments that it can reasonably expect to pay from current revenues in this fund.

It is therefore our opinion that the Texas Employment Commission may legally seek to obtain advances to its trust fund from the federal unemployment account of the Social Security Act pursuant to the procedures found in section 1201 of that act, and, if necessary, pay interest thereon from moneys available in the special administrative fund.

### S U M M A R Y

The state may legally obtain advances to its Texas Employment Commission Unemployment Trust Fund from the Federal Unemployment Account of the Social Security Act.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Robert L. Lattimore
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Rick Gilpin
Patricia Hinojosa
Robert L. Lattimore
Jim Moellinger