NOT DESIGNATED FOR PUBLICATION

No. 120,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LEAVENWORTH COUNTY BOARD OF COUNTY COMMISSIONERS,
*Appellee*,

v.

TAMARA COPELAND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; EDWARD E. BOUKER, judge. Opinion filed July 31, 2020. Affirmed.

*Gregory C. Robinson*, of Law Office of Gregory C. Robinson, of Lansing, for appellant.

*David A. Hoffman*, of Hoffman Law, LLC, of Overland Park, and *R. Scott Ryburn*, of Anderson & Byrd, of Ottawa, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

ATCHESON, J.: In 2016, the Leavenworth County Board of Commissioners approved a five-year employment contract with Tamara Copeland, who then served as the county's human resources director. After a change in commissioners, the board filed an action in the Leavenworth County District Court to have the contract declared void. The board later terminated Copeland, and she counterclaimed to enforce the contract's exceptionally generous severance package. The district court found the contract to be unenforceable as a legally impermissible attempt by one elected composition of the board to bind a later composition of that board. Copeland has appealed. The district court

1

correctly applied settled Kansas law to undisputed material facts in granting the board's motion for summary judgment. We, therefore, affirm the decision.

*Factual History, Procedural Progression, and Standard of Review*

Given the controlling issue and the governing law, much of the convoluted factual history leading up to this litigation and the progression of the legal battle itself fade into the background. We dispense with what have become extraneous details to provide a focused overview, recognizing the parties are familiar with what we have omitted from this narrative. Because the standards for granting and reviewing summary judgment shape how we must view the relevant facts, we begin there.

A party seeking summary judgment has the obligation to show the district court, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment could, therefore, be entered in that party's favor as a matter of law. *Trear v. Chamberlain*, 308 Kan. 932, 935-36, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the party submits there is nothing for a jury or a district court judge sitting as fact-finder to decide that would make any difference. Conversely, the party opposing summary judgment must point to record evidence calling into question a material factual representation made in support of the motion. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. When a party has identified disputed material facts, the motion should be denied in favor of a trial to permit a judge or jury to resolve those disputes after hearing witnesses testify and reviewing any relevant documentary evidence.

In ruling on a motion for summary judgment, the district court must view the evidence most favorably to the party opposing the motion, here Copeland, and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. An appellate court applies

2

the same standards in reviewing the entry of a summary judgment. Because a summary judgment presents a question of law—it entails the application of legal principles to uncontroverted facts—an appellate court owes no deference to the district court's decision to grant the motion, and review is unlimited. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009). In making that review here, we consider the factual record to Copeland's best advantage as the party that opposed summary judgment.[1]

[1]The district court judges regularly sitting in the First Judicial District, which includes Leavenworth County, recused themselves from this case. Senior Judge Edward E. Bouker, who sat in the Twenty-Third Judicial District before his retirement, was assigned to hear this case.

*Factual Background and Procedural History*

The board hired Copeland as the human resources director in late May 2015 with a one-year contract that included severance pay for six months if she were terminated other than for reasons that did not amount to good cause. She and the board agreed to a three-month extension of the contract while they negotiated a new employment agreement. As the record indicates, the human resources director is hired and fired by and reports directly to the three-member board of commissioners. During the contract negotiation in 2016, the commissioners were Robert Holland, Clyde Graeber, and Dennis Bixby.

The new contract came before the board at its September 1, 2016 meeting, for public consideration. By then, Bixby had been defeated in the primary election and had to go off the board in January 2017. As negotiated, the contract recited a five-year term. But other provisions of the agreement indicated a term beginning on September 1, 2016, and ending on December 31, 2021. The discrepancy is irrelevant here. The agreement outlined Copeland's job duties, salary, and fringe benefits, provisions that also do not bear directly on this legal dispute. The contract included a severance clause requiring the

3

county to pay Copeland the balance of her salary for the remainder of the five year period, so long as she was "willing and able" to perform her work and had not been convicted of a felony or fraud "directly relating to her [job] duties."

According to the minutes of the September 1, 2016 board meeting, Holland offered remarks lauding what Copeland had achieved during her first year as human resources director as a justification for the new contract. But Holland also said "high level officials" he did not identify had tried to impugn Copeland's abilities and character because they opposed the changes; he described the contract as insulating her from continued attacks "in the next several years." The board approved the contract with Copeland on a 2-1 vote, with Graeber voting against the agreement. The minutes reflect Graeber saying he would have "no problem" extending Copeland's contract for a year but could not support the five-year contract and "the liability" some of the provisions created for the county.

Doug Smith, who defeated Bixby in the August primary and won the general election in November, joined the board in January 2017. Six months later, the board filed this action asking the district court to declare Copeland's contract unenforceable and to enter an order rescinding it. Copeland duly responded and asserted counterclaims for breach of the agreement and for tortious interference with a contract.[2]

[2]The board's petition sought similar relief against three subordinates of Copeland who also had individual employment contracts with the county. The claims involving those employees were resolved in some fashion during the district court proceedings. Those employees were dismissed as parties by agreement before the district court issued any substantive rulings on the merits of the contracts. The board and Copeland are the only parties to this appeal.

In mid-September 2017, Graeber announced his resignation from the board effective September 28. Louis Kemp replaced him on October 12. Over the next three weeks, the board disbanded the human resources department, transferring those functions

4

to the county clerk's office and later to the county administrator; placed Copeland on administrative leave and required the department employees to return their office keys and county credentials; and fired Copeland on October 30. The board took all of those actions on 2-1 votes over Holland's objection.

As the docket entries in the district court suggest, the parties vigorously litigated this case. In July 2018, the district court issued a detailed written decision finding the severance provision of Copeland's contract to be unenforceable as a legally improper restraint by one board on a successor board given the duration of the contract. The district court, however, requested additional submissions from the parties on several issues, including Copeland's counterclaim for tortious interference and the efficacy of the remainder of the employment contract. With that briefing, the district court issued a final summary judgment in December in another written decision that denied Copeland's counterclaim and found the entire employment contract to be unenforceable. Copeland has appealed the district court's rulings on the employment contract itself but not the denial of her counterclaim for tortious interference.

*Legal Analysis*

    A. *Limitation on Length of Municipal Contracts: The* Simmons *Rule*

The Kansas appellate courts have long recognized that the elected members of a municipality's legislative body, such as a county commission, generally cannot enter into contracts that obligate the body beyond its current term. See *Edwards County Comm'rs v. Simmons*, 159 Kan. 41, 53-54, 151 P.2d 960 (1944); *Fisk v. Board of Managers*, 134 Kan. 394, 398, 5 P.2d 799 (1931). A municipal legislative body, thus, lacks the authority to make "'a contract longer than [its] life'" where "'no necessity exist[s].'" *Simmons*, 159 Kan. at 53 (quoting *Fisk*, 134 Kan. at 398). Absent necessity, the legislative exercise amounts to an impermissible attempt of the elected officials "'to tie the hands of their

5

successors."' *Simmons*, 159 Kan. at 53 (quoting *Fisk*, 134 Kan. at 398). As those cases and the authority cited in them show, the rule reaches back deep into Kansas legal history. Although longevity is not necessarily veneration, the limitation on municipal authority continues to be observed. See *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 792-93, 958 P.2d 637 (1998) (recognizing rule stated in *Simmons*); *Jayhawk Racing Properties, LLC v. City of Topeka*, 56 Kan. App. 2d 479, 499, 432 P.3d 678 (2018) (noting continued viability of rule and criteria in *Simmons*), *rev. granted* 309 Kan. 1348 (2019).

As *Simmons* suggests, the rule limiting the duration of a contract is not ironclad, and the court fashioned a test separating the permissible from the impermissible:

> "[W]hether the contract at issue, extending beyond the term, is an attempt to bind successors in matters incident to their own administration and responsibilities or whether it is a commitment of the sort reasonably necessary to protection of the public property, interests or affairs being administered. In the former case the contract is generally held to be invalid, and in the latter case valid." *Simmons*, 159 Kan. at 54.

A contract exceeding the elected body's term must be reasonable and consistent with sound public policy. *Simmons*, 159 Kan. at 54-55. The test has been cited with favor in *Kennedy*, 264 Kan. at 792, and *Jayhawk Racing*, 56 Kan. App. 2d at 498-99. What the courts outlined in *Simmons* and *Fisk* more than 75 years ago remains the governing law.

If a legislative body violates the rule, it acts outside its authority, and the resulting contract is void. As an *ultra vires* municipal act, the offending contract has no binding force. It is a legal nullity. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, Syl. ¶ 6, 181 P.3d 549 (2008); *Blevins v. Douglas County Bd. of Comm'rs*, 251 Kan. 374, Syl. ¶ 8, 834 P.2d 1334 (1992). Parties contracting with municipalities may not assert unjust enrichment, estoppel, or other equitable doctrines to obtain the benefit of the bargain from an *ultra vires* contract even if they have rendered their contractual performance. *Genesis Health Club*, 285 Kan. at 1042-43; see *Blevins*, 251 Kan. at 383-84.

*B. Copeland's Five-year Contract Exceeded Board's Term*

In applying those principles, we confront a gatekeeper issue: What is the "term" of a board of county commissioners? If it is more than five years, then the *Simmons* rule doesn't apply to the contract with Copeland. The district court concluded the term of the board could not be that long but declined to identify a specific period. We ultimately take the same approach and arrive at the same endpoint, although our path differs here and there.

We start with common ground. Each commissioner serves a four-year term. K.S.A. 2019 Supp. 19-202(d). The terms are staggered: Voters choose one commissioner in a given election year and the other two in the next election two years later, although that pattern may be altered when vacancies are filled between elections. K.S.A. 2019 Supp. 19-202(c). Over the course of four years, the voters elect all three commissioners. Those givens do not provide an obvious answer to the term of the board as a collective legislative body.

The parties and the district court all refer to K.S.A. 19-219, which requires county commissioners to meet the second Monday in January of *each year* to choose a chair "for a term of one (1) year" to preside over meetings. The balance of the statute discusses selection of a substitute if the elected chair is absent for a particular meeting or if he or she leaves the board during the year. Although we do not ultimately decide the point, we doubt K.S.A. 19-219 defines the term of a board of commissioners. The statute really drives nothing more than an internal administrative decision of the board members to select one of their own to preside over meetings and sets a one-year term for the presiding commissioner. The selection of a chair amounts to a bureaucratic function divorced from the makeup of the board itself or its authority to conduct the business of the county, attributes that do bear directly on what might fairly be considered the board's term.

We think the term of a municipal legislative body necessarily ties to the election cycles for the body, since the voters effectively pass on the makeup of the body. For a three-member county commission, the term of the body would be either two years, corresponding to each election cycle regardless of the number of seats on the ballot, or four years, corresponding to the period for all of the seats to have been on a ballot. Four years also replicates the term of office, arguably lending weight to the longer period. We don't see the appointment of a replacement for a commissioner leaving office before completing his or her term as triggering a new term for the body. See K.S.A. 2019 Supp. 19-203(a) (statutory procedure for filling commission vacancy). That would render the body's term unpredictable and arbitrary. Likewise, the voters' decision to return incumbents to office wouldn't extend the body's term for precisely the same reason.

The term of a county commission necessarily must be a fixed, knowable period. But the parties have pointed us to nothing definitively declaring the term, and we have fared only marginally better in our own search. Discussion in *Shelden v. Board of Commissioners*, 48 Kan. 356, 358, 29 P. 759 (1892), and repeated in *Board of Commissioners v. Smith*, 50 Kan. 350, 355, 32 P. 30 (1893), favors the idea that a board is reconstituted each election cycle, meaning the applicable term here would be two years. But we choose not to read those cases as controlling precedent, given the constitutional and statutory changes in the composition, terms of office, and other mechanics governing county commissions in the interceding century and a quarter.

In short, we think the term of the board probably was either two years or four years and under no circumstances more than four years. Since we have no need to refine the determination to decide this case, we decline the opportunity. The five-year contract the board approved for Copeland exceeded the body's term and, therefore, was subject to the rule outlined in *Simmons*.

In an effort to avert that conclusion, Copeland suggests the board had no fixed term as a legislative body because one and possibly two positions would not be on the ballot in a given election cycle, so there always would be at least one carryover commissioner from election to election. According to Copeland, the board would have a perpetual or infinite term as a result. We find the suggestion improbable. Although counties and cities, as political subdivisions of the state, have continuing and uninterrupted corporate existences, that's materially different from suggesting the elected legislative body itself operates in perpetuity unless all of its members stand for election at one time. Distinguishing legislative bodies that way because some have staggered terms of office and others don't makes no particular sense. We are disinclined to impute arbitrariness or irrationality to a common-law rule by reading into it something our predecessors have not expressly identified as one of its components.

Similarly, were the *Simmons* rule constrained in the way Copeland suggests, the *Kennedy* court presumably would have said so and relied on that ground for rejecting the contract argument made against Shawnee County in that case. The court did not and, instead, outlined and applied *Simmons* in rejecting the contract claim. *Kennedy*, 264 Kan. at 792-93. Finally, there apparently could be a sequence of vacancies and replacements between elections on a three-member county commission resulting in all three positions being on the next following general election ballot. See K.S.A. 2019 Supp. 19-202(a). The possibility, though remote, also undercuts Copeland's argument.

### C. Applying the Simmons *Rule to Copeland's Contract*

We, therefore, should apply the test laid down in *Simmons* to the five-year employment contract the board entered into with Copeland. The test does not impose a categorical rule prohibiting all contracts exceeding a board's term. The limitation focuses on contracts "incident to" the board's "own administration and responsibilities." *Simmons*, 159 Kan. at 54. The hiring of a county department head answerable directly to the board

9

falls within that rule. And the conclusion is only redoubled here, since Copeland oversaw personnel practices and decisions. Those are distinctly administrative functions tied most immediately to the internal operation of the county. The hiring of executive level employees who implement the board's decisions on—and, indeed, its vision of—how the county will operate as a governmental entity cuts to the core of the sort of administrative functions and responsibilities embraced in the *Simmons* rule.

By contrast, contracts excepted from the rule secure public property or are necessary for the promotion of broad policies or programs directly improving the services delivered to the citizenry at large. The county typically contracts with third parties to accomplish those objectives. The cases offer illustrative examples that demonstrate by counterpoint why the rule applies to the contract with Copeland.

So the City of North Newton, a comparatively small municipality, could lawfully enter into a 15-year contract with the City of Newton to use the latter's sewage treatment system. See *City of North Newton v. Regier*, 152 Kan. 434, 438, 103 P.2d 873 (1940). The benefit to the residents of North Newton seems manifest:  They received a vital service without having to make the capital investment in a treatment facility. The duration of the contract was reasonable, given the effort and expense to install the required collection pipes. And North Newton paid for the service based on a fee schedule tied to usage. More recently, the Kansas Supreme Court upheld a five-year contract between Gove County and a private entity to provide trash collection because the service was vital to the public health and welfare and the arrangement avoided significant costs to purchase trucks and hire employees to pick up and dispose of trash throughout the county. See *Zerr v. Tilton*, 224 Kan. 394, 400, 581 P.2d 364 (1978).

The contract in *Simmons* also promoted a public interest, although, perhaps, in a less direct way. There, the board hired a private lawyer on a contingent fee basis to pursue delinquent taxes from a railroad in receivership with the expectation the litigation

10

would be protracted and time consuming and any recovery uncertain. The court recognized that the contract exceeded the board's term but found it to be appropriate and enforceable, emphasizing that lawyers employed to handle extended litigation, such as the receivership action, "cannot reasonably be said . . . [to] lose all authority to act the moment the term of the contracting board expires, regardless of the status of matters pending." *Simmons*, 159 Kan. at 54.

As those cases show, boards properly entered into contracts extending beyond their terms to provide essential services, such as sewage treatment and trash collection, through outside parties, when the arrangements were fiscally responsible and otherwise reasonable. The contract for legal services in a particularly involved piece of litigation similarly advanced an objective public benefit by both ensuring continuity of representation and curtailing ongoing costs through a contingent fee.

The employment contract with Copeland, as a department head reporting directly to the board, rests on demonstrably different footing. The five-year contract intruded directly and deeply into the board's administration of county operations, most particularly personnel policies and practices. The severance provision compounded the impermissible intrusion. A future board would face a material economic detriment in terminating Copeland, since she was to receive her full salary and fringe benefits for the duration of the contract. And she would have to be replaced or her duties delegated to other county employees presumably already working at capacity. When Holland urged his fellow board members to approve the contract, he touted the arrangement, in part, because Copeland "needs our protection from those that may still want to try to fire her in the next several years because of the work she is doing for the County." If Copeland were to be terminated, it would be a future board that would do it. That's precisely how things played out in October 2017. Holland, thus, promoted the contract as a means of tying the hands of a successor board.

11

The United States Court of Appeals for the Tenth Circuit recognized a corollary to the *Simmons* rule for certain employment contracts and upheld a three-year agreement the Kansas Turnpike Authority's board made with John E. Kirchner, its preferred candidate to be the agency's general manager. *Kirchner v. Kansas Turnpike Authority*, 336 F.2d 222, 228-29 (10th Cir. 1964). The court cited *Simmons* and other Kansas cases generally limiting the duration of a contract with a governmental entity to the term of the entity's board. And the court acknowledged a potential problem with the contract because a majority of the positions on the appointed KTA board would turn over within three years.

The court held the contract with Kirchner to be valid because the three-year term was itself reasonable and likely necessary to secure the services of a qualified candidate at an acceptable salary. Those prospects would have dimmed considerably if the offer were for an at-will arrangement—all to the disadvantage of the agency. 336 F.2d at 228-29. The court pointed out that Kirchner's predecessor worked under a similar contract with a three-year term and the Kansas Attorney General's office had issued an opinion affirming the board's ability to hire a general manager for such a term. According to the court, those circumstances cut against any "ulterior motives" by the board to subvert a future board's authority. 336 F.2d at 228.

Not surprisingly, Copeland tries to fit her contract within the confines of the *Kirchner* exception. We assume that twist on the *Simmons* rule is consistent with and ought to be engrafted to Kansas law. A federal court opinion is not, however, a binding declaration of state law. *KPERS v. Reimer & Koger Associates, Inc.*, 262 Kan. 635, Syl. ¶ 12, 941 P.2d 1321 (1997). But even with that assumption, Copeland's effort fails. First, of course, Copeland accepted the position as human resource director with a one-year contract. We gather the board had reorganized how the county handled personnel functions, and Copeland was the first to occupy the newly created position of human resources director. But nothing in the record supports the notion that a five-year contract was essential for attracting or retaining well-qualified candidates for the job.

12

In the same vein, Copeland argues that the contract conferred a public benefit because under her direction, with the support of the board that brought her in, the county moved from personnel processes rooted in cronyism to ones based on merit with some civil service protections for some employees. And Copeland characterizes her ouster as part of the new board's plan to return to a less-than-professional system apparently affording the commissioners considerable say-so in who would get what jobs with the county. Holland also suggested the county realized cost savings through an improved payroll system and other bureaucratic changes. The appellate record is skimpy on evidence establishing those claims. Still, taking them as facially accurate, they don't establish a tenable legal basis for upholding the contract, especially given its duration and severance provision.

Improvements to internal personnel functions, like payroll, don't reflect the sort of core public services warranting extended contractual commitments upheld in *City of North Newton* and *Zerr*, even if they may be more efficient or less expensive. Although each member of this panel may have a general preference between patronage and civil service systems for local governments, we would overstep our judicial prerogative to treat one as inherently and inestimably good and the other as similarly bad in deciding this case. Given the limited record and the absence of evidence the county has engaged in impermissible hiring or other personnel practices based on political affiliation or protected characteristics such as race or sex, our choice would be a generic one intruding upon the board's legislative authority. In short, Copeland's generalized claim that she and Holland were advancing the cause of good government doesn't save her contract.

*D.  Copeland Identifies No Factual Disputes Precluding Summary Judgment*

Copeland suggests summary judgment was inappropriate because there remain disputed facts bearing on the board's intent in entering a five-year contract with her and the question of intent is material to the outcome. But Copeland doesn't point to specific disputes in the summary judgment papers or the supporting evidentiary materials submitted to the district court. We are not obligated to scour the record for some particular factual dispute that may be material simply because the party losing on summary judgment generally asserts there must be one.

The record does show the board had the intent to contract with Copeland to remain as the human resources director for five years; that's apparent from the agreement itself. The contract facially appears to violate *Simmons*—it exceeds a term of the board and simply retains a high-level county employee answerable directly to the board in excess of that term. We understand Copeland to be arguing, in part, that there are factual disputes about why the board (or more precisely Holland and Bixby) believed a five-year contract served a beneficial public purpose or was necessary in a way fitting it within an exception to the *Simmons* rule.

In opposing the county's motion for summary judgment, Copeland offered evidence to the district court bearing on the board's reasons or motives for the contract. She says there may be disputes about that evidence requiring a jury trial. But we have considered that evidence in the best light for her, consistent with the proper standard of appellate review, and found it insufficient to bring the contract within an exception to *Simmons*.

14

As Copeland suggests, a jury could consider and resolve conflicts in the material evidence. In doing so, the jury might weigh the evidence *against* Copeland on some of those points. But we have resolved any possible conflict *in favor of* Copeland—the best she could possibly do in front of a jury. Even in that light, she has failed to establish sufficient legal grounds to warrant enforcement of the contract. Accordingly, the existence of such a factual dispute would not preclude the district court from entering summary judgment against Copeland or us from affirming that ruling. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 276, 261 P.3d 943 (2011) (Summary judgment may be entered on what is normally a fact question for a jury when the evidence taken in the best light for the nonmoving party fails to establish a basis for the jury to return a verdict for that party.).

We have defused Copeland's argument by assuming away any conflict by considering the factual record entirely in her favor. We, therefore, have no reason to reverse the summary judgment simply because there might have been material factual disputes.

### E. Severability

Finally, Copeland argues that the clause in the contract fixing the term at five years may be severed or excised and the remainder of the agreement enforced. The argument misapprehends the *Simmons* rule. If the rule applies (and we have determined that it does), then the contract is void as an *ultra vires* exercise. The board did something it has no legal authority to do. As we have said, the result is a legal nullity. Just as equitable doctrines will not protect a party contracting with the municipality from the adverse consequences of the agreement being declared void, a district court may not sever the offending portion of the contract or reform its terms to resuscitate the bargain. Simply put, if a contract with a municipality is void under *Simmons*, there is nothing that can be manipulated into a viable agreement. See *Blevins*, 251 Kan. at 383-85. The impact

15

on the party contracting with the municipality is undeniably harsh, and that party's protection lies in assessing the municipality's authority to act before entering into the arrangement. 251 Kan. at 385.

In fashioning her argument, Copeland first points to the severability clause in the contract. The clause states that if a court were to find "any provision . . . of this agreement . . . to be invalid, the remaining terms shall remain in full force and effect." But the clause does not apply here. Because the contract was void as a violation of the *Simmons* rule, none of its terms ever became effective. So there was nothing that could remain in effect. By way of a contrasting example, suppose a city entered into a service contract with a private party that included a forum selection clause requiring any suit for a breach be filed in that city's municipal court. Municipal courts in Kansas don't have the authority to hear civil actions, such as breach of contract claims. If the contracting party sued the city in the district court and the city objected, the district court could find the forum selection clause invalid and enforce the remainder of the agreement. The ineffective forum selection clause would not taint the rest of the otherwise valid contract. Here, however, the contract's legally impermissible duration contaminated every aspect of the agreement.

Copeland cites *Gilhaus v. Gardner Edgerton Unified School Dist. No. 231*, 138 F. Supp. 3d 1228, 1239-40 (D. Kan. 2015), as supporting a different conclusion. In that case, several school district employees sued the district and other defendants under both federal civil rights law and Kansas law, and the federal district court denied defendants' motion to dismiss on the grounds the complaint failed to state claims upon which relief could be granted. As to a state law contract claim, the court held that if a "post-employment benefits clause" in School Superintendent William Gilhaus' contract exceeded the school board's "authority," it could be severed, and the remainder of the agreement could be enforced. The court cited cases relying on general contract principles governing severability. And the court also determined the contract did not impermissibly

16

bind future school boards because various provisions merely allowed those boards to freely exercise or decline options. 138 F. Supp. 3d at 1138-39. So the court recognized the contract as a whole to be viable rather than void. The court was not addressing a legal circumstance it would consider analogous to this one. Nor do we see them that way. In turn, the court's treatment of severability is inapposite to Copeland's situation. If they were legally comparable, we would find the court's willingness to sever portions of the contract to be inconsistent with *Simmons* and *Blevins* and their specific treatment of *ultra vires* municipal contracts.

Copeland alternatively argues the district court in this case could have treated the contract as one for a year, paralleling the original agreement, and, thus, replacing the offending five-year term. This alternative solution suffers from multiple problems. Again, the five-year contract was void, so there was nothing to reform or revise. Even if there were, the district court would have been imposing a contract term on the parties that bore no relationship to their actual intent or the resulting written agreement. Typically, courts cannot and do not rewrite the parties' contract to insert new or different terms. See *Fourth Nat'l Bank & Trust Co. v. Mobil Oil Corp.*, 224 Kan. 347, 353, 582 P.2d 236 (1978) ("It is not the function of the courts to make contracts but to enforce them."); *Lindsey Masonry Co. v. Murray & Sons Construction Co.*, 53 Kan. App. 2d 505, 533, 390 P.3d 56 (2017) (Atcheson, J., concurring) ("[C]ourts typically cannot make contracts for the parties by imposing essential terms that the parties themselves have failed to agree upon.").

In addition, as the County points out, a one-year term would not have helped Copeland. The board adopted the contract on September 1, 2016, and she signed it the same day. The successor board first voted to take some arguably adverse action against Copeland inconsistent with the contract on October 12, 2017, and voted to fire her on October 30. Copeland's hypothetical one-year contract would have expired by then. Just what their employment relationship would have been at that stage isn't entirely clear, but

17

the contract itself would not have governed. Copeland's suggestion of a one-year contract doesn't stave off summary judgment.

*Conclusion*

Having considered the parties' arguments and authority and having examined the summary judgment record, we find no legal or factual errors in the district court's determination that the five-year contract between the board and Copeland is void and, thus, unenforceable as a matter of law.

Affirmed.