IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,156

CITY OF OLATHE,
*Appellant/Cross-appellee*,

v.

CITY OF SPRING HILL and JAMES HENDERSHOT, City Administrator, City of Spring Hill
*Appellees/Cross-appellants*.

SYLLABUS BY THE COURT

1.

An elected governing body may not use its legislative power to constrain future governing bodies to follow its governmental, or legislative, policy decisions.

2.

An elected governing body may use its administrative or proprietary authority to enter into enforceable contracts to pay a specified sum over a specified time.

3.

The development, introduction, or improvement of services are, by and large, considered governmental, but the routine maintenance of the resulting services is generally deemed proprietary.

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed July 1, 2022. Affirmed; temporary stay of judgment lifted.

1

*Anthony F. Rupp,* of Foulston Siefkin LLP, of Overland Park, argued the cause, and *Matthew D. Stromberg* and *Sarah E. Stula,* of the same firm, and *Christopher M. Grunewald* and *Ronald R. Shaver*, of City of Olathe, were with him on the briefs for appellant/cross-appellee.

*Curtis L. Tideman*, of Lathrop GPM LLP, of Overland Park, argued the cause and was on the briefs for appellees/cross-appellants.

*Greg L. Musil* and *Brett C. Randol*, of Rouse, Frets, White, Goss, Gentile, Rhodes PC, of Leawood, was on the brief for amicus curiae Bonita Station Investments, LLC.

The opinion of the court was delivered by

ROSEN, J.:  This is a tale of two cities. On March 23, 2006, the cities of Spring Hill and Olathe entered into a written agreement (Agreement) to restrict their future growth by establishing boundaries for annexing land lying adjacent to the two cities. Olathe agreed not to seek annexation of property south of the boundary line, while Spring Hill agreed not to seek to annex property north of the line. Each city reserved the right to annex land within their respective boundary lines. The cities cited several goals they hoped to achieve through the Agreement, including:

- Avoiding annexation and zoning disputes that could lead to illogical or premature annexations and unwanted development;
- Avoiding duplication of planning and provision of extraterritorial services; and
- Providing property owners clear indication of future city plans for annexation, provision of services, and comprehensive development.

The Agreement had no fixed expiration term. Instead, it was to "remain in effect until terminated," and termination could "occur only upon mutual consent of the parties."

In addition to the agreement with Spring Hill, Olathe entered into similar agreements in 1983 with Lenexa, in 1988 with Gardner, in 1989 with Gardner and DeSoto, and in 2005 with Overland Park.

On March 10, 2021, Olathe filed a petition in district court requesting declaratory judgment, a temporary restraining order, and preliminary and permanent injunctive relief. The petition alleged that on March 1, 2021, Spring Hill notified Olathe of its intent to annex land north of the boundary line. Spring Hill stated its plan was to pursue a commercial site development known as Project Extract. The Spring Hill Planning Commission discussed Project Extract at a public meeting on March 4, 2021. The narrow objective of the project was to annex land for development by a private enterprise, Carvana, that had already contracted with a property owner to purchase land on the Olathe side of the boundary for commercial development. The annexation project was set on the Spring Hill City Council agenda for March 11.

The petition further alleged that Olathe had recently instituted a comprehensive development plan designating residential and employment areas and planning for traffic flow and provision of services in a planned expansion that included land subject to the Agreement. Olathe asserted various harms that would result from Project Extract, including redesigning Olathe's development plans, undermining the future provision of services to the land lying within Olathe's Agreement boundaries, promoting uncertainty to both landowners and city planners, and opening Johnson County up to chaotic land grabs by municipalities seeking to protect their future growth options from their neighboring municipalities.

On that same day, March 10, the district court conducted a hearing on the motion for temporary restraining order and application for preliminary injunction. After hearing arguments from the parties, the court took the matter under advisement. On March 11, the district court granted a temporary restraining order pending an evidentiary hearing. The order restrained Spring Hill from annexing the disputed property or from undertaking actions in preparation for annexation. On May 19, the district court conducted an evidentiary hearing on Olathe's injunction request at which several witnesses testified.

On June 14, the district court entered judgment holding the Agreement unenforceable as a governmental action that could not bind subsequent City Councils. The court denied the request for injunctive relief. Hours later, the Spring Hill City Council adopted an ordinance to annex the land designated as Project Extract. The district court subsequently entered final judgment, referring back to the June 14 decision, and held the petition failed to state a cause of action upon which relief could be granted. The court then dismissed the suit.

Olathe and Spring Hill filed timely notices of appeal and cross-appeal and docketed their respective appeals with the Court of Appeals. While the appeal was pending, the district court entered an order staying its judgment pending appeal. The order enjoined the parties from pursuing land annexations beyond the boundary line set out in the Agreement. Then, on August 19, Spring Hill filed a motion with the appellate courts to stay, modify, or vacate the district court's stay pending appeal. On September 2, the Court of Appeals denied the motion, and, in the alternative, issued its own stay and injunction during the pendency of this appeal. On September 23, this court granted Olathe's motion to transfer the case to the Supreme Court.

*Discussion*

The enforceability of municipal contracts and their legal effect may be determined de novo by the appellate courts regardless of the construction by the trial court. See *Jayhawk Racing Properties, LLC v. City of Topeka*, 313 Kan. 149, 153-54, 484 P.3d 250 (2021).

At the core of this appeal, and governing our decision, is a longstanding common law rule that an elected governing body may not use its legislative power to constrain future governing bodies to follow general policy decisions. This is a rule that extends across the various jurisdictions in this country and has long been recognized in Kansas.

As early as 1872, this court has held that "in deciding what past laws shall stand, and what be repealed, each legislature is free and absolute. . . . 'One legislature cannot abridge the powers of a succeeding legislature." *Gilleland v. Schuyler*, 9 Kan. 569, 580, 1872 WL 660 (1872). As recently as 2021, this court reiterated this principle in holding that "[o]ne [C]ity [C]ouncil may not bind a subsequent one to its political decisions involving the exercise of government functions." *Jayhawk Racing*, 313 Kan. 149, Syl. ¶ 6.

As this court has explained, in the context of federal constitutional law, "the Contract Clause does not require a state to adhere to a contract that surrenders an essential attribute of its sovereignty," such as contracts that limit a state's power to act in the future. *Partners v. U.S.D. No. 214,* 284 Kan. 397, Syl. ¶ 3, 403, 160 P.3d 830 (2007).

In *Edwards County Comm'rs v. Simmons*, 159 Kan. 41, Syl. ¶ 6, 151 P.2d 960 (1944), this court held:

"In determining the question of validity of a contract made by a board or other governmental agency extending beyond the official term of the contracting board or officials, one test generally applied is whether the contract is an attempt to bind successors in matters incident to such successors' administration and responsibilities, or whether it is a commitment of a sort reasonably necessary for protection of the public property, interests or affairs being administered. In the former case the contract is generally held to be invalid and in the latter case valid."

The *Simmons* court held that a municipal legislative body lacks the authority to make "'a contract longer than [its] life'" when "'no necessity exist[s].'" 159 Kan. at 53 (quoting *Fisk v. Board of Managers*, 134 Kan. 394, 398, 5 P.2d 799 [1931]).

The essence of this rule lies in the fundamental philosophy of American democracy. Within the constraints of constitutionally protected rights, it is the will of the electorate that determines policy decisions. If an elected governing body is allowed to bind future bodies to a particular course of action, the effect is to silence the will of voters in the future. The Commonwealth Court of Pennsylvania explained the doctrine that an elected entity may not enter into contracts the duration of which extends beyond the terms for which the members of the entity were elected:

"[T]he doctrine here at issue has its roots in our fundamental notions of democratic government. We select public officials, legislative or executive, whom [*sic*] we believe will carry out the policies intended by the electorate. If they fail to do so, or if the people conclude that new policies are in order, they can be voted out of office. To allow an elected body to perpetuate its policies beyond its term of office would frustrate the ability of the citizenry to exercise its will at the ballot box." *Lobolito, Inc. v. N. Pocono Sch. Dist.*, 722 A.2d 249, 252 (Pa. Commw. Ct. 1998), *aff'd in part, rev'd in part* 562 Pa. 380, 755 A.2d 1287 (2000).

6

To hold otherwise would invite elected governing bodies to make their policies permanent, defeating the ability of future voters to set their own courses, leading to archaic legislation, stagnation, and an inability to respond to changed circumstances.

The Pennsylvania Supreme Court set out this reasoning in this way:

> "The obvious purpose of the rule [that a legislative body cannot take action that will bind its successors in the performance of governmental functions] is to permit a newly appointed governmental body to function freely on behalf of the public and in response to the governmental power or body politic by which it was appointed or elected, unhampered by the policies of the predecessors who have since been replaced by the appointing or electing power. To permit the outgoing body to 'hamstring' its successors by imposing upon them a policy—implementing and to some extent, policymaking machinery, which is not attuned to the new body or its policies, would be to most effectively circumvent the rule." *Mitchell v. Chester Housing Auth.*, 389 Pa. 314, 324-25, 132 A.2d 873 (1957).

As we explained in *Jayhawk Racing*, certain kinds of government obligations may be binding on the bodies that enter into them. So-called "administrative" or "proprietary" obligations may be enforced against a governing body. "Governmental" or "legislative" agreements, on the other hand, are not binding on subsequent elected bodies. 313 Kan. at 152-53, 156-57.

At times, differentiating between the governmental and administrative functions can be challenging for parties and courts. This is not such a situation.

7

A contract to pay a specified sum over a specified period of time is an example of an administrative or proprietary function. *Jayhawk Racing*, 313 Kan. at 156-57. In a general sense, governmental or legislative powers relate to affairs of political jurisdiction and promoting the public welfare at large. Such powers involve policymaking, and such a function cannot be contracted away: one legislative body cannot bind its successor to its policy commitments. 313 Kan. at 153.

In *McAlister v. City of Fairway*, 289 Kan. 391, 403-04, 212 P.3d 184 (2009), this court provided four guidelines for determining whether an action by a governing body is governmental or proprietary, and the district court in this case relied on those guidelines to conclude that the Agreement between Olathe and Spring Hill was governmental in nature. We agree with the district court's conclusion, but we deem it unnecessary to break the analysis down into the *McAlister* steps.

The development, introduction, or improvement of services are, by and large, considered governmental, but the routine maintenance of the resulting services is generally deemed proprietary. *Jayhawk Racing*, 313 Kan. at 158.

The Agreement in the present case clearly relates to the former category. At most, it addresses the development, introduction, or improvement of services, and it reflects quintessential policy considerations. As a governmental function, it cannot be considered a contract with a binding effect on future elected councils.

Cases from other jurisdictions support the conclusion that annexation and community development are policy decisions that cannot bind future elected leaders. See, e.g., *City of Leeds v. Town of Moody*, 294 Ala. 496, 319 So. 2d 242 (1975) (agreement purporting to bind city to relinquish its police jurisdiction over any territory in county

8

outside its corporate limits and to refrain from accepting any petitions in future for annexation of land in that county was void); *City of Centerville v. City of Warner Robins*, 270 Ga. 183, 188-89, 508 S.E.2d 161 (1998) (Carley, J., dissenting) ("The annexation power is strictly legislative. [Citation omitted.] Thus, an agreement between two municipalities for each to refrain from accepting annexation petitions without the consent of the other is null and void."); *CHW-Lattas Creek, LP by GP Alice Lattas Creek, LLC v. City of Alice*, 565 S.W.3d 779, 786-87 (Tex. App. 2018) ("[W]e conclude community development . . . is a governmental function" and "the purpose of the Development Agreement was to promote economic development [so] the City was engaged in a governmental function when it entered into the Development Agreement."); *Pitzer v. City of Abilene*, 323 S.W.2d 623, 626 (Tex. Civ. App. 1959) ("The annexation of territory by a municipality is the exercise of a governmental power. As a general rule the governing body of a municipal corporation may not by contract bind successors in office in the exercise of a purely governmental power."); *Town of Brockway v. City of Black River Falls*, 285 Wis. 2d 708, 726, 702 N.W.2d 418 (2005) (in determining validity of agreement relating to annexation, rationale for principle that a municipality may not contract away its governmental powers is that municipality is wholly creature of legislatively delegated power and therefore cannot by ordinance or contract bargain away that portion of the state's sovereignty).

In addition, we observe that the Agreement in the present case bears no hallmarks of being a contract for the provision of services or to carry out any particular undertaking with respect to either the property-owners in the unincorporated land or the other party to the Agreement. The Agreement did not call for either party to provide any particular services or even to annex the land in question. If neither party were to take any action at all with respect to that land, no party could claim a breach of contract. Olathe cannot argue that the Agreement governs the provision of essential services because the

9

Agreement does not establish who would provide services, what those services would be, when those services would be provided, or even *if* those services would be provided.

The Agreement is simply a promise not to do something for an indeterminate length of time. It is very different from an agreement to provide "routine maintenance" of services, an administrative function. See *Jayhawk Racing*, 313 Kan. at 158. It instead relates to "the development, introduction, or improvement of services," a governmental function. 313 Kan. at 158. We therefore conclude that the Agreement is an unenforceable attempt to bind future City Councils to a governmental policy decision.

This conclusion governs the result in this case. The Agreement is not binding.

Olathe argues that two statutory provisions authorize municipalities to enter into agreements such as the present one: K.S.A. 2021 Supp. 12-2908, concerning municipal contracts to perform governmental services, activities, or undertakings; and K.S.A. 12-101, enabling the home-rule amendment to the Kansas Constitution.

Assuming—without deciding—that K.S.A. 2021 Supp. 12-2908 authorizes agreements relating to annexations, such as this one, we nevertheless conclude that the statute does not overrule or undermine the democratic principle that an elected governing body may not bind its successors to policy decisions.

K.S.A. 2021 Supp. 12-2908(b) states:

> "Any municipality may contract with any municipality to perform any governmental service, activity or undertaking which each contracting municipality is authorized by law to perform. The contract shall be authorized by the governing body of

10

the municipality and shall state the purpose of the contract and the powers and duties of the parties thereunder."

The statute explicitly states the contract must be authorized by law. A contract that is of open-ended duration that seeks to restrain the policy decisions of future municipal governments is, as we have just observed, not authorized by law. Nothing in the statutory language suggests the Legislature intended to provide a mechanism to undermine the authority of elected municipal governments to select their own policy options.

We find Olathe's reliance on home-rule powers similarly unavailing. K.S.A. 12-101 provides that a city may "[m]ake all contracts and do all other acts in relation to the property and concerns of the city necessary to the exercise of its corporate or administrative powers." Olathe contends this statute authorizes open-ended contracts that may remain in force long after the voters have elected new officials to their city governments.

Such a conclusion would have the effect of fatally undermining the very essence of home-rule. It would take away from elected municipal governments the ability to make decisions and act according to the will of the voters if prior governments had committed them to policy courses.

As a hypothetical example, let us suppose that an anti-growth City Council passed a resolution stating that the city would never expand its borders beyond its then existing city limits. A couple of years later, a new City Council sees a benefit to the city resulting from annexation of adjacent property. Under Olathe's home-rule argument, a member of the earlier council could successfully bring suit to enforce the resolution using a home-rule theory of authority. After all, the resolution would neatly fit the home-rule statutory

11

language allowing municipalities to "do all other acts in relation to the property and concerns of the city necessary to the exercise of its corporate or administrative powers." But such an outcome would invite all elected governing bodies to make their policies permanent, and it would defeat the ability of future voters to set their own courses.

As was the case with K.S.A. 2021 Supp. 12-2908, we see nothing in K.S.A. 12-101 abrogating the rule that a City Council cannot bind a future City Council to its policy decisions.

Finally, Olathe argues that *Simmons*, 159 Kan. at 41, supports enforcement of the contract. We consider this to be a misreading of the case. As we noted earlier, *Simmons* is one more case among many holding that contracts are not valid when the terms of the contracts extend beyond the terms of the contracting officials. 159 Kan. 41, Syl. ¶ 6. As with other authorities, *Simmons* states that maintaining and protecting public property and affairs may require longer-term contracts, but only when "reasonably necessary." 159 Kan. 41, Syl. ¶ 6.

Olathe demonstrates no reasonable necessity in enforcing the Agreement. In fact, the Agreement involves property over which Olathe has no authority:  the land to be "protected" lies outside its city limits. It is possible that Olathe intended to annex that land someday, but it is also possible that Olathe would never annex that land. Either way, the Agreement does not compel Olathe to do anything in particular to protect the public property, interests, or affairs of that land. If Olathe were to have annexed the land, it would presumably have to provide services to that land, whether the Agreement existed or not. The Agreement was not necessary for the provision of services to that land. *Simmons* does not support Olathe's position.

12

Spring Hill also argues by way of a cross-appeal that the Agreement is invalid because the parties did not obtain approval from the Attorney General as set out in K.S.A. 2021 Supp. 12-2904(g). Spring Hill contends that K.S.A. 2021 Supp. 12-2904 is the relevant statute governing interlocal agreements, not K.S.A. 2021 Supp. 12-2908. Because we find the Agreement to be unenforceable as an improper attempt to set out policy decisions for future City Councils, we do not decide at this time whether the Legislature intended to enact statutory provisions overlapping in their scope and inconsistent in their requirements.

The decision of the district court is affirmed. Olathe is not entitled to injunctive relief, and the stay on the district court decision is lifted.